UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 2:16cr112 |
| | ) | |
| AUSTIN J. INGLES, | ) | Sentencing Date: December 16, 2016 |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S POSITION ON SENTENCING

The United States of America, through the undersigned attorneys, respectfully submits this Position on Sentencing in this case. The United States concurs with the findings of the Presentence Investigation Report (PSR), and it further concurs that the Defendant's applicable adjusted Offense Level is 12 and his Criminal History Category is I. Accordingly, the defendant's advisory Sentencing Guidelines range is 10-16 months. The government respectfully recommends that the Court impose a sentence of 12 months of imprisonment and 3 years of supervised release.

### I.  INTRODUCTION

On or about April 17, 2016, together with co-conspirators BRANDON MONAHAN and A.U., the defendant, INGLES, agreed to break into the Navy Exchange (hereinafter, the "NEX"), in Norfolk, Virginia, within the Eastern District of Virginia, for the purpose of stealing government property. The NEX is a Department of the Navy organization. Merchandise sold at the NEX belongs to the United States Government, through the Department of the Navy. During the daytime hours of April 17, 2016, the defendant and co-conspirator MONAHAN went to the NEX, perused cases of jewelry for sale within the store and identified the items they wished to steal. The defendant and MONAHAN spent approximately 2-3 hours in the store. The co-conspirators

1

identified Rolex watches, gold jewelry, and Effy brand jewelry as targets for their theft. INGLES and MONAHAN left the NEX.

INGLES, together with MONAHAN and A.U., returned to the NEX parking lot at approximately 11:52 on the evening of April 17, 2016, in INGLES' blue Volvo XC90 SUV. The co-conspirators had removed the license plates from the vehicle with the intent to avoid detection by law enforcement. Once in the NEX parking lot, INGLES and MONAHAN left the vehicle. A.U. remained in the vehicle, ready to drive away when INGLES and MONAHAN returned. MONAHAN and INGLES proceeded toward the NEX.

Once they reached the store, they broke glass doors at the store's entrance with rocks they had brought from MONAHAN's home. They entered the store and ran to the jewelry and watch counters that they had surveyed earlier in the day. MONAHAN and INGLES used the rocks they had brought from MONAHAN's home to smash several jewelry and watch cases. They removed store merchandise from the cases. The merchandise included: 7 Rolex watches, 128 pieces of Effy jewelry, and 22 pieces of gold jewelry. The Rolex watches had an aggregate value of $44,313. The Effy jewelry had an aggregate value of $92,923.50. The gold jewelry had an aggregate value of $10,244.68. MONAHAN and INGLES put the merchandise in backpacks and ran out of the store.

MONAHAN and INGLES returned to INGLES' vehicle. A.U. drove the co-conspirators out of the NEX parking lot and toward Virginia Beach. At some point, they pulled over to put the license plates back on the vehicle. Once the license plates were back on the vehicle, the co-conspirators drove to Winston-Salem, North Carolina, where MONAHAN had a residence. Once at MONAHAN's residence in North Carolina, the co-conspirators removed the tags from the stolen

merchandise. On or about April 18, 2016, the co-conspirators visited numerous pawn shops in the Winston-Salem, North Carolina area to sell the watches and jewelry they had stolen.

## II. PROCEDURAL HISTORY

On August 15, 2016, the United States Attorney's Office in the Eastern District of Virginia, Norfolk Division, filed a one-count criminal information, charging the defendant with Theft of Government Property, in violation of 18 U.S.C. § 641. On September 2, 2016, pursuant to a plea agreement, the defendant pleaded guilty to the criminal information before The Honorable Douglas E. Miller.

## III. ARGUMENT

A sentence of 12 months of imprisonment and 3 years of supervised release is appropriate, considering the advisory nature of the guidelines and the 18 U.S.C. § 3553(a) factors. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court made clear that sentencing courts should consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. at 264; *see also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence."). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B); *Biheiri*, 356 F.Supp.2d at 594.

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

*A. The Nature and Circumstances of the Offense*

The defendant and his co-conspirators committed a deliberate, premeditated crime that showed an absolute disregard for the property of others. In addition to stealing almost $150,000 from the Navy Exchange, the co-conspirators caused damage to the Navy Exchange itself by shattering the glass doors at the front of the Exchange. They proceeded to move stolen goods in interstate commerce and sell the merchandise at various stores throughout the Winston-Salem area. Their actions reveal a persistence and commitment to a criminal scheme, rather than a momentary lapse of judgment.

*B. History and Characteristics of the Defendant (Section 3553(a)(1))*

The defendant grew up in a largely stable home and was gainfully employed at the time of his offense. Nothing in his personal history explains or excuses his decision to break into the Navy Exchange and commit, essentially, a jewel heist. The defendant's personal history and

4

characteristics do indicate that he can be a productive member of society once he serves his term of imprisonment, if he is able to overcome his substance abuse issues. Therefore, the government emphasizes its request that the Court impose the statutory maximum term of three years of supervised release in addition to a sentence of imprisonment, to put the government in the best possible position to ensure that the defendant does not make destructive decisions in the future.

> C. *Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote the Respect for Law, and to Provide Just Punishment for the Offense (Section 3553(a)(2)(A))*

A sentence of 12 months of imprisonment is necessary to reflect the seriousness of the defendant's crimes, to provide just punishment for that crime and to promote respect for the law. The defendant's actions demonstrate a serious disrespect for the law. He brazenly broke into a large department store, the Navy Exchange, smashed jewelry cases, and made off with jewels and high-end watches. As the defendant was gainfully employed at the time of the break-in, his crime can only be explained as a reckless disregard for the law fueled by either greed or a need to fund his addiction to illegal narcotics. His offense required the Navy Exchange to make repairs to their doors and jewelry cases. The conspiracy resulted in loss to the Navy Exchange, as well as to the small businesses in North Carolina that were duped into purchasing the stolen merchandise. The defendant's actions had a real impact on these businesses. For that reason, a serious sentence of imprisonment is necessary

> D. *Need to Afford Adequate Deterrence and Protect Public from Further Crimes (Section 3553(a)(2)(B)-(C))*

Imposing a sentence of 12 months of imprisonment for the Defendant would serve the important purpose of deterring future individuals within the district and beyond from engaging in similar misconduct. General deterrence has its greatest impact in white-collar cases, like this

one, because these crimes are committed in a more rational and calculated manner than sudden crimes of passion or opportunity. *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). Specifically, this defendant stole property, transported it in interstate commerce, and trafficked it in several different establishments. It was deliberate, calculated, and took great effort to achieve. This was not a crime of passion or sudden opportunity. Individuals who consider committing similar crimes in the future can be deterred by a serious sentence in this case.

*E. Avoiding Unwarranted Sentence Disparities (Section 3553(a)(6))*

INGLES is the first defendant to enter a plea of guilty and face sentencing in this case. His co-conspirator, MONAHAN, has agreed to plead guilty to the same offense and is awaiting a court date before Judge Morgan. A.U. spent much of the fall of 2016 in state custody in North Carolina on unrelated charges, but has now been appointed counsel by the U.S. District Court in the Eastern District of Virginia. Because neither MONAHAN or A.U. have been sentenced by this Court, there is no possibility that INGLES' sentence will result in a disparity between his sentence and those of his co-conspirators.

The Court may look to the cases of *United States v. Bagley* and *United States v. Menard* for comparison. These defendants were part of a conspiracy to steal government property from Naval Weapons Station Yorktown—Cheatham Annex in December 2015. They did not successfully steal any property, although the object of the conspiracy was to steal military equipment to sell to foreign nationals. Both Bagley and Menard were minimal participants in the conspiracy. They were sentenced to eleven and fifteen months in prison, respectively.[1]

---

[1] However, defendants Bagley and Menard both had significant criminal histories. Bagley was a Criminal History Category IV. Menard was a Criminal History Category VI.

6

INGLES—who successfully stole almost $150,000 in government property, transported it across state lines, and sold it—deserves a sentence at least on par with Bagley and Menard's sentences.

*F. Restitution*

Restitution is mandatory in this case, pursuant to 18 U.S.C. § 3663A. The government is seeking restitution in the amount of $148,821.18.

## IV. <u>CONCLUSION</u>

Based on the foregoing, the United States requests that this Court impose a term of imprisonment of 12 months and three years of supervised release.

Respectfully submitted,

DANA BOENTE
UNITED STATES ATTORNEY

By: *(signature)*
Alyssa K. Nichol
Special Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-3554
Facsimile: (757) 441-3205
E-mail: Alyssa.Nichol@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of December, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

Eric Leckie, Esquire
999 Waterside Drive
Suite 2525
Norfolk, Virginia 23510
(757) 474-2930

James D. Byers, Esquire
105 West Fourth Street
Suite 400
Winston-Salem, North Carolina 27101
(336) 727-1070

_____
Alyssa K. Nichol
Special Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-3554
Facsimile: (757) 441-3205
E-mail: Alyssa.Nichol@usdoj.gov